1  LEWIS & LLEWELLYN LLP
      Marc R. Lewis (Bar No. 233306)
2      Paul T. Llewellyn (Bar No. 216887)
3  71 Stevenson Street, Suite 825
   San Francisco, California 94105
   Telephone: (415) 800-0590
4  Facsimile: (415) 390-2127
   Email: mlewis@lewisllewellyn.com

5
   YELP INC.
6      Aaron Schur (Bar No. 229566)
   706 Mission Street
7  San Francisco, California 94103
   Telephone: (415) 908-3801
8  Facsimile: (415) 908-3833
   Email: aschur@yelp.com

9

10 Attorneys for Plaintiff
   YELP INC.

11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15

16 YELP INC., a Delaware corporation          CASE NO.

17              Plaintiff,                     **COMPLAINT FOR DAMAGES AND
                                              INJUNCTIVE RELIEF FOR:**
18        v.
                                              **(1) BREACH OF CONTRACT (TERMS OF
19 DATAFINITI LLC, a Texas limited liability   SERVICE); (2) BREACH OF CONTRACT
   company, d/b/a 80legs; SHION               (CONFIDENTIALITY AGREEMENT); (3)
20 DEYSARKAR, an individual, and DOES 1-      COPYRIGHT INFRINGEMENT; (4)
   50, inclusive.                             VIOLATIONS OF THE COMPUTER
21                                            FRAUD AND ABUSE ACT; (5)
                                              VIOLATIONS OF THE COMPUTER DATA
22              Defendants.                   ACCESS AND FRAUD ACT; (6) UNFAIR
                                              COMPETITION – STATE LAW; (7)
23                                            TRADEMARK INFRINGEMENT; (8)
                                              UNFAIR COMPETITION – FEDERAL
24                                            LAW; (9) TRADEMARK DILUTION; (10)
                                              UNJUST ENRICHMENT / RESTITUTION;
25                                            and (11) AN ACCOUNTING.**

26                                            **DEMAND FOR JURY TRIAL**

27                                            Trial Date: None Set

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

CV 12 1444

1   Plaintiff Yelp Inc. ("Yelp") alleges as follows against Defendants Datafiniti LLC, d/b/a

2   80legs, Shion Deysarkar, and Does 1-50, inclusive:

3                                   **INTRODUCTION**

4        1.        This case is about Shion Deysarkar, who claims that he is simply an entrepreneur

5   trying to build a business called "80legs." Unfortunately, his "business" consists of scraping and

6   copying information from other websites—including Yelp's websites— and selling it for profit.

7        2.        Yelp owns and operates a popular website which features information about local

8   businesses, including ratings, reviews, photos, and more. Yelp's website, which is located at

9   www.yelp.com, and equivalent international websites, such as www.yelp.co.uk (collectively, the

10  "Yelp Site") averaged 66 million monthly unique visitors in the fourth quarter of 2011.

11       3.        In late 2011, Yelp learned that Deysarkar, through his website, 80legs.com

12  ("80legs"), was selling, to unknown third parties with unknown purposes, content he had

13  unlawfully scraped and copied from the Yelp Site. Deysarkar and 80legs sold these scraped data

14  packages using Yelp's registered service mark—advertising the data as "Yelp Crawl Packages."

15       4.        Yelp contacted Deysarkar and told him to stop. Yelp also sought to determine

16  how much information he had taken, to whom he had sold the information, and what the

17  purchasers had done with the information. Deysarkar ultimately proved unwilling to cooperate.

18  Yelp now files this lawsuit to seek redress.

19                                  **THE PARTIES**

20                                      **Yelp**

21       5.        Yelp is a Delaware corporation with its headquarters in San Francisco, California.

22       6.        Yelp owns and operates the Yelp Site, which features information about local

23  businesses, including millions of ratings, reviews, photos, and more for local businesses around

24  the world.

25       7.        The information that is featured on the Yelp Site includes information that is

26  developed or licensed by Yelp at significant expense. For example, Yelp licenses business

27  listing information from several different data providers to help users locate and contact even the

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  smallest family-owned businesses.  The Yelp Site also features helpful information contributed

2  by its users, such as their interests, reviews, photos, and favorite local spots.

3       8.     Access to and use of the Yelp Site is governed by Yelp's Terms of Service ("Yelp

4  TOS"), which is displayed prominently on the Yelp Site.

5  **Defendants**

6       9.     On information and belief, Defendant Shion Deysarkar is a Texas resident.  Yelp

7  is informed and believes that Deysarkar is, or at all relevant times has been, the CEO of

8  Datafiniti and/or its predecessor entities.  On information and belief, Mr. Deysarkar established a

9  user account with Yelp on or about August 16, 2007 which he continued to use at least until

10  2011.

11       10.     Defendant Datafiniti is a Houston-based Limited Liability Company.  Yelp is

12  informed and believes that Datafiniti is the parent company of, and/or does business as, "80legs."

13  80legs bills itself as "the most powerful web crawler ever," and operates a website available at

14  www.80legs.com.

15       11.     Since at least 2009, Defendants have conducted web crawls via a crawler

16  associated with 80legs.  A crawler (also known as a "robot" or "bot") is a type of computer

17  program that browses and gathers information from the internet.  Web crawlers are generally

18  used to extract data from websites.

19       12.     On information and belief, Defendants do not purchase information from the

20  owners of data sets.  Instead, they use crawlers to visit other web sites and scrape and copy their

21  data.

22       13.     Defendants have packaged and sold "crawl packages," or bundles of data that

23  they gathered from websites through their crawlers.  Defendants sell such packages despite the

24  fact that they do not own any rights in the underlying data which they are selling and regardless

25  of whether their access to the underlying data was authorized or prohibited.

26  **FACTUAL ALLEGATIONS**

27       14.     The Yelp TOS governs access to and use of the Yelp Site, and have at all times

28

3

1    relevant to this Complaint expressly prohibited scraping of the Yelp Site. Therefore, absent

2    express authorization from Yelp, scraping of the Yelp Site is a violation of the Yelp TOS.

3         15.    In 2009, without Yelp's permission and in violation of the Yelp TOS, Defendants

4    began scraping the Yelp Site through the 80legs web crawler, hitting the Yelp Site millions of

5    times by July 2009.

6         16.    Realizing that 80legs was violating the Yelp TOS, specifically its provision

7    against scraping of the Yelp Site, Yelp immediately thereafter took further measures to prevent

8    80legs from crawling the Yelp Site. Specifically, Yelp altered its website code through a

9    standard known as the "robots.txt" file to stop 80legs's crawler from accessing the Yelp Site.

10   "Robots.txt" is a standard which websites use to provide instructions to web crawlers.

11        17.    Specifically, on or about August 14, 2009, Yelp added the user agent string

12   "80bot"—the user agent string used by 80legs's crawler—to a list of "disallowed" robots on its

13   robots.txt file. Yelp did so to ensure that neither 80legs, nor anyone affiliated with 80legs, would

14   crawl the Yelp Site.

15        18.    Unknown to Yelp, after Yelp instructed 80legs not to access the Yelp Site through

16   revisions to its robots.txt file, Defendants began using a new user agent, "008", instead of the

17   previous user agent "80bot". In November 2011, Yelp discovered that Defendants were

18   packaging and selling Yelp's data that Defendants apparently were continuing to obtain from the

19   Yelp Site. Specifically, Defendants were offering "Yelp Crawl Packages," or a "pre-configured

20   live crawl" of the Yelp Site. Defendants described their product as a "crawl of listings and

21   reviews on Yelp." Defendants also offered a "Yelp People Crawl," or a "crawl of reviews of

22   users on Yelp." Defendants were charging $700 per month to its customers for the "crawl

23   packages." Defendants also offered to sell Yelp's archived data, at a price of $1,000 per million

24   archived records. (Exhibit 1.)

25        19.    On November 18, 2011, Yelp sent a "cease and desist" letter to Defendants,

26   instructing Defendants to immediately cease their copying and selling of content from the Yelp

27   Site. Furthermore, because Yelp takes very seriously the unauthorized access, sale, and

28

1 dissemination of its data and the content contributed by its users, Yelp also sought to find out

2 who had obtained this data, and how much they paid.  Thus, Yelp asked Defendants to provide:

3 (1) The number of crawl packages that Defendants sold; (2) Whether Defendants sold any other

4 data from the Yelp Site in any form; (3) Information sufficient to identify the recipients of each

5 of the crawl package; and (4) The amount of money that Defendants received from the sale of

6 Yelp's data. (Exhibit 1.)

7   20. Just two days after Yelp sent its letter, Defendants informed Yelp that they would

8 "immediately" remove the Yelp-related crawl packages from their website.  But Defendants

9 ignored Yelp's further requests for information concerning the identities of the purchasers of the

10 Yelp crawl packages, which would have enabled Yelp to determine if the scraped data had been

11 distributed further.

12   21. Despite repeated requests, Defendants refused to provide the requested

13 information, based on unspecified "privacy" grounds.  In order to alleviate Defendants'

14 purported privacy concerns, in December 2011 Yelp entered into a confidentiality agreement

15 with Defendants to try and obtain the identities of the customers who had purchased the Yelp

16 crawl packages.  (Exhibit 2; the "Confidentiality Agreement".)

17   22. After entering into the Confidentiality Agreement, Defendants and Yelp had

18 further communications in December 2011 and January 2012 concerning the issues raised in

19 Yelp's original cease and desist letter.  These communications are expressly deemed confidential

20 per the Confidentiality Agreement and therefore Yelp will not disclose them here, in a public

21 filing.

22   23. Nevertheless, even after entering into the Confidentiality Agreement, Defendants

23 *still* refused to provide the identities of the customers who had purchased the Yelp crawl

24 packages.

25   24. Instead of providing these customers' identities, Deysarkar instead filed a

26 frivolous lawsuit.  On January 25, 2011, Deysarkar filed a complaint on behalf of a company

27 called Computational Crawling—which on information and belief no longer exists and did not

28

1  exist at the time of the filing of Deysarkar's complaint—seeking a declaratory judgment against

2  Yelp in the Southern District of Texas.

3      25.     When he filed his Complaint, Deysarkar attached as exhibits correspondence

4  between him and Yelp that was exchanged under the Confidentiality Agreement.  Thus, in filing

5  the Complaint, and as described further below, Deysarkar has violated the Confidentiality

6  Agreement in addition to the Yelp TOS.

7                              **JURISDICTION**

8      26.     Yelp's Third Claim for Relief arises under the Copyright Act, 17 U.S.C. §§ 101 *et*

9  *seq.*  Yelp's Fourth Claim for Relief arises under the Computer Fraud and Abuse Act, 18 U.S.C.

10  §§ 1030 et seq.  Yelp's Seventh, Eighth and Ninth Claims for Relief arise under the Lanham Act.

11  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. §

12  1030(g), 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

13      27.     This court has supplemental jurisdiction over the pendent state law claims and

14  parties under 28 U.S.C. § 1367, because these claims are so related to Yelp's claims under

15  federal law that they form part of the same case or controversy and derive from a common

16  nucleus of operative facts.

17      28.     This Court has personal jurisdiction over all Defendants because, in accessing the

18  Yelp Site, Defendants agreed to be bound to the Yelp TOS.  In doing so, Defendants agreed to

19  "submit and consent to the personal and exclusive jurisdiction in . . . the state and federal courts

20  located within San Francisco County, California."  (Exhibit 3, Sec. 13.)  Further, Yelp's servers

21  are located in San Francisco, California, and therefore Defendants' conduct—the unauthorized

22  access and copying of data from those servers—occurred in this District.

23                              **VENUE**

24      29.     Venue in this district is appropriate, pursuant to 28 U.S.C. § 1391, because a

25  substantial part of the events giving rise to the dispute occurred in this district, a substantial part

26  of the property that is the subject of the action is situated in this district, and the Court has

27  personal jurisdiction over each of the parties as alleged throughout the complaint.

28

30.     Venue in this district is further appropriate because, in using the Yelp Site, Defendants agreed to be bound to the Yelp TOS. In doing so, Defendants agreed to "submit and consent to . . . the exclusive venue of, the state and federal courts located within San Francisco County, California." (Exhibit 3, Sec. 13.) This venue provision has been included in the Yelp TOS at all times relevant to the allegations in this Complaint.

## INTRADISTRICT ASSIGNMENT

31.     Assignment in the San Francisco division is proper under Civil L.R. 3-2 because a substantial part of the events giving rise to the claims occurred in the County of San Francisco and a substantial part of the property that is the subject of the action is situated in the County of San Francisco.

32.     Assignment in the San Francisco division is further appropriate because, in using the Yelp Site, Defendants agreed to be bound to the Yelp TOS. In doing so, Defendants agreed to "submit and consent to . . . the exclusive venue of, the state and federal courts located within San Francisco County, California." (Exhibit 3, Sec. 13.) This district assignment provision has been included in the Yelp TOS at all times relevant to the allegations in this Complaint.

## FIRST CLAIM FOR RELIEF

### Breach of Contract (Yelp Terms Of Service)

### (By Yelp Against All Defendants)

33.     Yelp incorporates by reference the allegations of paragraphs 1-32 as though fully set forth herein.

34.     Defendants agreed to be bound by the Yelp TOS. (*See* Exhibit 3.)

35.     Section 1(A) of the Yelp TOS states that a "user" of the Yelp Site is someone who "accesses, browses, crawls, scrapes, or in any way uses" the Yelp Site. Under this definition, Defendants are "users" of the Yelp Site. (*Id.*, Section 1(A).)

36.     Section 6(B) of the Yelp TOS states that no user may "[m]odify, adapt, appropriate, reproduce, distribute, translate, create derivative works or adaptations of, publicly display, sell, trade or in any way exploit the Service or Site Content (other than Your Content),

7

1 || except as expressly authorized by Yelp." (*Id.*, Section 6(B).)

2 ||    37.    Section 6(B) of the Yelp TOS also prevents any user from using "any robot,

3 || spider, site search/retrieval application, or other automated device, process or means to access,

4 || retrieve, scrape, or index any portion of the Service or any Site Content." (*Id.*)

5 ||    38.    Section 6(A) of the Yelp TOS states that no user may "use the Service for

6 || commercial purposes, except in connection with a Business Account and as expressly permitted

7 || by Yelp." (*Id.*, Section 6(A).)

8 ||    39.    Yelp has performed all conditions, covenants, and promises required on its part to

9 || be performed in accordance with the terms and conditions of the Yelp TOS.

10 ||    40.    Defendants have breached the Yelp TOS by, among other things:

11 ||        a.   Selling, without authorization, "crawl packages" consisting of large quantities

12 ||            of data that it has copied from the Yelp Site;

13 ||        b.   Using an unauthorized robot or other automated device to access the Yelp

14 ||            Site; and

15 ||        c.   Using the Yelp Site for commercial purposes other than in connection with a

16 ||            Business Account for unauthorized purposes.

17 ||    41.    As a result of Defendants' breach of the Yelp TOS, Defendants have caused

18 || damage to Yelp in an amount to be determined at trial.

19 ||                    **SECOND CLAIM FOR RELIEF**

20 ||            **Breach of Contract (Confidentiality Agreement)**

21 ||                    (By Yelp Against All Defendants)

22 ||    42.    Yelp incorporates by reference the allegations of paragraphs 1-41 as though fully

23 || set forth herein.

24 ||    43.    In December 2011, the parties entered into the Confidentiality Agreement.

25 ||    44.    Section 1 of the Confidentiality Agreement states that the parties "agree to and

26 || shall treat as 'Confidential Information' any revenue or sales information exchanged, any

27 || settlement proposals exchanged, anything that is said, and any documents exchanged in

28

1   connection with said discussions." (Exhibit 2, Section 1.)  Section 1 of the Confidentiality

2   Agreement further states that "'Confidential Information' shall also include any correspondence,

3   documents or exchanges leading up to or occurring after commencement of such discussions."

4   (*Id.*)

5          45.     In Section 2 of the Confidentiality Agreement, the parties agree that no

6   "Confidential Information" shall be "disclosed to any judge, jury, arbitrator, or other tribunal in

7   any lawsuit or arbitration." (*Id.*, Section 2.)

8          46.     In Section 3 of the Confidentiality Agreement, the parties agree that Confidential

9   Information may be disclosed in Court only when "the other party is first given advance notice of

10   such disclosure and a reasonable opportunity to oppose such disclosure, and further provided that

11   any court-ordered disclosure shall be pursuant to a protective order entered by a court of

12   competent jurisdiction." (*Id.*, Section 3.)

13         47.     Yelp has performed all conditions, covenants, and promises required on its part to

14   be performed in accordance with the terms and conditions of the Confidentiality Agreement.

15         48.     Defendants have breached the Confidentiality Agreement by publicly airing the

16   parties' settlement discussions.  Defendants filed a complaint in the Southern District of Texas

17   without first providing Yelp with advance notice of any disclosure, and without even the filing of

18   a protective order, much less the entry of one.  The complaint itself summarizes the parties'

19   settlement efforts and communications, all of which are specifically classified as "Confidential

20   Information" per the Confidentiality Agreement.  The complaint also includes the specific

21   amount of money that Yelp offered to settle the matter in lieu of litigation, which is also

22   confidential per the agreement.  The complaint also attaches email correspondence between

23   Deysarkar and Yelp that occurred after the Confidentiality Agreement was signed, which is also

24   protected by the Confidentiality Agreement.  Finally, the complaint also attaches a January 17,

25   2012 letter from Yelp to Deysarkar, constituting settlement efforts between the parties and as

26   such was protected from disclosure by the Confidentiality Agreement.

27         49.     As a result of Defendants' breach of the Confidentiality Agreement, Defendants

28

9

1   have caused damage to Yelp in an amount to be determined at trial.

2                          **THIRD CLAIM FOR RELIEF**

3                            **Copyright Infringement**

4                          (By Yelp Against All Defendants)

5       50.     Yelp incorporates by reference the allegations of paragraphs 1-49 as though fully

6   set forth herein.

7       51.     Yelp has provided the United States Copyright Office with a complete application

8   for a copyright that would cover the materials obtained by Defendants through their unauthorized

9   web crawling activity.

10      52.     Defendants have intentionally and willfully infringed Yelp's pending copyright

11  by, among other things, crawling the Yelp Site and obtaining information from the Yelp Site, and

12  packaging and selling that information to others.

13      53.     Defendants have also violated the Yelp's exclusive rights of Yelp to control the

14  distribution, creation of derivative works and public display of copyrighted works by

15  downloading, copying, creating derivative works from and/or distributing content from the Yelp

16  Site and/or derivative works to Defendants' customers, via posting to its website, by electronic

17  mail, through file transfer protocol, or otherwise.

18      54.     Defendants were not authorized to copy, download, reproduce, create derivative

19  works from, distribute, or publicly display the content on the Yelp Site.

20      55.     In addition to directly infringing Yelp's exclusive rights, Defendants have

21  contributorily and/or vicariously infringed the exclusive rights of Yelp by controlling, directing,

22  intentionally encouraging, inducing or materially contributing to the copying, distribution, public

23  display or creation of derivative works from the Yelp Site.  Defendants also obtained a direct

24  financial benefit from the above alleged infringing activities while declining to exercise their

25  right to stop it or limit it.

26      56.     Defendants knew or should have known that copying, distributing, public display

27  of, and creating derivative works of and from the Yelp Site, infringed the exclusive rights of

28

1  Yelp in those materials.

2       57.    Yelp is entitled to damages in an amount to be proven at trial.

3       58.    Defendants' infringement of the exclusive rights of Yelp has caused Yelp

4  irreparable injury. Unless restrained and enjoined, Defendants will continue to commit such

5  acts. Yelp's remedies at law are not adequate to compensate it for these inflicted and threatened

6  injuries, entitling Yelp to remedies including injunctive relief and an order impounding or

7  destroying any and all infringing materials.

8  **FOURTH CLAIM FOR RELIEF**

9  **Violation of Computer Fraud And Abuse Act**

10  **(18 U.S.C. §§ 1030(a)(2)(C), (a)(4) & (a)(5))**

11  (By Yelp Against All Defendants)

12       59.    Yelp incorporates by reference the allegations of paragraphs 1-58 as though fully

13  set forth herein.

14       60.    Defendants have violated the Computer Fraud And Abuse Act ("CFAA"), 18

15  U.S.C. § 1030(a)(2)(C), by intentionally accessing a computer used for interstate or foreign

16  commerce or communication, without authorization from Yelp or by exceeding authorized

17  access to such a computer, and by obtaining information from such a protected computer.

18       61.    Defendants have violated the CFAA, § 18 U.S.C. 1030(a)(4) by knowingly, and

19  with intent to defraud Yelp, accessing a protected computer, without authorization or by

20  exceeding authorized access to such a computer, and by means of such conduct furthered the

21  intended fraud and obtained one or more things of value, including content from the Yelp Site.

22       62.    The computer system or systems that Defendants accessed as described above

23  constitute a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2).

24       63.    Yelp has suffered damage and loss by reason of these violations, including,

25  without limitation, harm to Yelp's data, programs, and computer systems, and other losses and

26  damage in an amount to be proven at trial, and well in excess of $5,000 aggregated over a one

27  year period.

28

11

64.     Defendants' unlawful access to Yelp's computers has caused Yelp irreparable injury.  Unless restrained and enjoined, Defendants will continue to commit such acts.  Yelp's remedies at law are not adequate to compensate them for these inflicted and threatened injuries, entitling Yelp to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

### FIFTH CLAIM FOR RELIEF

### Violation Of Computer Data Access And Fraud Act

### (Cal. Penal Code § 502)

(By Yelp Against All Defendants)

65.     Yelp incorporates by reference the allegations of paragraphs 1-64 as though fully set forth herein.

66.     Defendants have violated California Penal Code § 502(c)(2) by knowingly and fraudulently, and without permission, accessing, taking, copying, and making use of programs, data, and files from Yelp's computers, computer systems, and/or computer networks.

67.     Defendants have violated California Penal Code § 502(c)(3) by knowingly, fraudulently, and without permission accessing and using Yelp's computer services.

68.     Defendants have violated California Penal Code § 502(c)(6) by knowingly, fraudulently, and without permission providing, or assisting in providing, a means of accessing Yelp's computers, computer systems, and/or computer networks.

69.     Defendants have violated California Penal Code § 502(c)(7) by knowingly, fraudulently, and without permission accessing, or causing to be accessed, Yelp's computers, computer systems, and/or computer networks.

70.     Yelp owns certain data that comprises information obtained by Defendants as alleged above.

71.     As a direct and proximate result of Defendants' unlawful conduct within the meaning of California Penal Code § 502, Defendants have caused damage to Yelp in an amount to be proven at trial.  Yelp is also entitled to recover its reasonable attorneys' fees pursuant to California Penal Code §502(e).

12

72.     Yelp is informed and believes that the aforementioned acts of Defendants were willful and malicious in that Defendants' acts described above were done with the deliberate intent to injure Yelp's business and improve its own. Yelp is therefore entitled to punitive damages.

73.     Yelp has also suffered irreparable injury from these acts, and due to the continuing threat of such injury, have no adequate remedy at law, entitling Yelp to injunctive relief.

## SIXTH CLAIM FOR RELIEF

### Unfair Competition

### (Cal. Bus. & Prof Code § 17200)

(By Yelp Against All Defendants)

74.     Yelp incorporates by reference the allegations of paragraphs 1-73 as though fully set forth herein.

75.     Defendants have engaged in unlawful business acts or practices by committing illegal acts and practices as alleged herein, all in an effort to gain unfair competitive advantage over Yelp.

76.     These unlawful business acts or practices were committed pursuant to business activity related to accessing providing data to third-parties unlawfully accessed and obtained from the Yelp Site.

77.     The acts and conducts of Defendants constitute fraudulent, unlawful, and unfair competition as defined by Cal. Bus. & Prof. Code §§ 17200, et seq.

78.     Defendants' conduct constitutes violations of numerous state and federal statutes and codes, including but not limited to, violation of the Computer Fraud and Abuse Act (18 U.S.C. §§ 1030 et seq., and violation of the Computer Data Access And Fraud Act (Cal. Penal Code § 502).

79.     Defendants have improperly and unlawfully taken commercial advantage of Yelp's investment in the content of the Yelp Site. In light of Defendants' conduct, it would be

13

1  inequitable to allow Defendants to retain the benefit of the funds obtained through the

2  unauthorized and unlawful use of that property.

3      80.    Defendants' unfair business practices have unjustly minimized Yelp's competitive

4  advantages and have caused and are causing Yelp to suffer damages.

5      81.    As a result of such unfair competition, Yelp has also suffered irreparable injury

6  and, unless Defendants are enjoined from such unfair competition, will continue to suffer

7  irreparable injury, whereby Yelp has no adequate remedy at law.

8      82.    Defendants should be compelled to disgorge and/or restore any and all revenues,

9  earnings, profits, compensation, and benefits they may have obtained in violation of Cal. Bus. &

10  Prof. Code § 17200 *et seq.* including but not limited to returning any revenue earned from the

11  unlawful and unfair use of data misappropriated from the Yelp Site, and should be enjoined from

12  further unlawful, unfair and deceptive business practices.

13  **SEVENTH CLAIM FOR RELIEF**

14  **Trademark Infringement**

15  **(Lanham Act; 15 U.S.C. § 1114)**

16  (By Yelp Against All Defendants)

17      83.    Yelp incorporates by reference the allegations of paragraphs 1-82 as though fully

18  set forth herein.

19      84.    Yelp is the owner of all rights in the service marks that are the subject of the

20  following registrations (the "Yelp Marks"):

21

22

23
| Registration Number | Service Mark | Services |
| --- | --- | --- |
| 3,660,122 | YELP | Online social networking services, in International Class 45. |
| 3,660,119 | YELP | Providing online electronic bulletin boards for transmission of messages among computer users concerning rankings, ratings, |

| | | |
|---|---|---|
| | | reviews, referrals, and recommendations relating to business organizations and service providers, in International Class 38. |
| 3,181,664 | YELP | Providing telephone directory information via global communications networks; Providing an online interactive website obtaining users comments concerning business organizations, service providers, and other resources; Providing information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to business organizations, service providers, and other resources using a global computer network., in International Class 35. |

85.   The Yelp Marks are valid, protectable service marks that have been registered as marks on the principal register in the United States Patent and Trademark Office.

86.   Yelp is the owner and registrant of the Yelp Marks.

87.   Defendants have used the Yelp Marks in connection with the sale of their "crawl packages" without Yelp's consent, in a manner that is likely to cause confusion, or to cause mistake, or to deceive.

88.   Defendants' infringement of the Yelp Marks was willful.

89.   Yelp has been and continues to be damaged by Defendants' infringement.

## EIGHTH CLAIM FOR RELIEF

### Federal Unfair Competition

### (By Yelp Against All Defendants)

90.   Yelp incorporates by reference the allegations of paragraphs 1-89 as though fully

15

1    set forth herein.

2        91.    The Yelp Marks are valid, protectable service marks that have been registered as

3    marks on the principal register in the United States Patent and Trademark Office.

4        92.    Yelp is the owner and registrant of the Yelp Marks.

5        93.    Yelp operated under and uses the trade name "Yelp" in connection with its

6    services.

7        94.    Defendants have made commercial use of the Yelp Marks, Yelp's trade name, and

8    content from Yelp's website.

9        95.    Defendants' use has been done in a manner that is likely to cause confusion to or

10   to cause mistake, or to deceive as to the affiliation, connection, or association of Yelp with

11   Defendants, or as to the origin, sponsorship, or approval of Defendants' goods, services, or

12   commercial activities

13       96.    Yelp has not consented to Defendant's use of the Yelp Marks or trade name.

14   Defendants' unauthorized use of the Yelp Marks and trade name was willful.

15       97.    Defendants' acts constitute false statements  in connection with products and/or

16   services distributed in interstate commerce, in violation of section 43(a) of the Lanham Act, 15

17   U.S.C. § 1125(a).

18       98.    Defendants' acts have caused irreparable injury to Yelp's goodwill and

19   reputation.  The injury to Yelp is and continues to be ongoing and irreparable.  An award of

20   monetary damages alone cannot fully compensate Yelp for its injuries and Yelp lacks an

21   adequate remedy at law.

22       99.    Yelp is entitled to an injunction against Defendant, as well as all other remedies

23   available under the Lanham Act, including, but not limited to, compensatory damages, treble

24   damages, disgorgement of profits, and costs and attorneys' fees.

25   **NINTH CLAIM FOR RELIEF**

26   **Dilution Of Famous Marks**

27   (By Yelp Against All Defendants)

28

100.    Yelp incorporates by reference the allegations of paragraphs 1-99 as though fully set forth herein.

101.    The Yelp Marks are famous trademarks within the meaning of the Anti-Dilution Act, 15 U.S.C. §1125(c).

102.    Yelp has no control over the quality of the crawl packages sold by Defendants, its use of the Yelp Marks, and its misappropriation of information from the Yelp Site.  As a result of such use by Defendants, the distinctive qualities of the Yelp Marks are being and will continue to be diluted.

103.    Defendants' acts have diluted and will continue to result in the dilution of the distinctive nature of the Yelp Marks through blurring, in violation of 15 U.S.C. § 1125 (c).

104.    Defendants' wrongful conduct constitutes an extreme threat to the distinctiveness of the Yelp Marks that Yelp has expended great efforts to develop and maintain.

105.    The distinctive nature of the Yelp Marks is of enormous value, and Yelp is suffering and will continue to suffer irreparable harm and blurring of the Yelp Marks if Defendants' wrongful conduct is allowed to continue.

106.    The dilution of the Yelp Marks will likely continue unless the Court orders injunctive relief against Defendants.

107.    Yelp is entitled to an injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

### TENTH CLAIM FOR RELIEF

#### Unjust Enrichment / Restitution

(By Yelp Against All Defendants)

108.    Yelp incorporates by reference the allegations of paragraphs 1-107 as though fully set forth herein.

109.    Defendants unjustly received benefits at Yelp's expense and through their wrongful conduct, including their breach of the Yelp TOS, their breach of the Confidentiality

17

1   Agreement, interference with Yelp's business relationships and other unfair business practices.

2   Defendants continue to unjustly retain these benefits at Yelp's expense.  It would be unjust for

3   Defendants to retain any value they obtained as a result of their wrongful conduct.

4        110.    Yelp is entitled to the establishment of a constructive trust consisting of the

5   benefit conferred upon Defendants by the revenues derived from their wrongful conduct at

6   Yelp's expense, and all profits derived from that wrongful conduct.  Yelp is further entitled to

7   full restitution of all amounts in which Defendants have been unjustly enriched at Yelp's

8   expense.

9                        **ELEVENTH CLAIM FOR RELIEF**

10                                **Accounting**

11                         (By Yelp Against All Defendants)

12       111.    Yelp incorporates by reference the allegations of paragraphs 1-110 as though fully

13   set forth herein.

14       112.    Since at least 2009, Defendants have obtained business through the use of

15   unlawful conduct, as alleged elsewhere in the complaint.

16       113.    Defendants have received money as a result of their misconduct, at Yelp's

17   expense, at some or all such money is rightfully due to Yelp.

18       114.    The amount of money due from Defendants to Yelp cannot be ascertained without

19   an accounting of the income and gross profits Defendants have obtained through their wrongful

20   and unlawful conduct.  Yelp is entitled, therefore, to a full accounting.

21                           **PRAYER FOR RELIEF**

22       Wherefore, Yelp prays for the following:

23       1.    For a preliminary and permanent injunction ordering Defendants, their officers,

24   agents, servants, employees, and attorneys, and those in active concert or participation with any

25   of them, to:

26       a.    Cease and desist from using any robot, spider, site search/retrieval

27   application, or other automated device, process or means to access, retrieve, scrape, or index any

28

18

1  portion of the Yelp Site;

2          b.    State whether Defendants currently offers, or has offered, any other data

3  obtained from the Yelp Site in any form;

4          c.    Provide information sufficient to identify the recipients of each of the

5  Yelp crawl packages that Defendants have disseminated; and

6          d.    State the amount of money that Defendants have received from the sales

7  of each of the Yelp crawl packages that Defendants have disseminated.

8       2.    For an order requiring Defendants to file and serve on Yelp a written declaration,

9  under oath, setting forth in detail the manner and form in which Defendants have complied with

10  the injunction;

11       3.    For damages to be proven at trial;

12       4.    For prejudgment interest;

13       5.    For an accounting;

14       6.    For an order awarding Yelp its' attorneys' fees and costs;

15       7.    For an order awarding Yelp punitive damages in a sum to be determined at trial,

16  on the basis of Defendants' willful and deliberate unauthorized computer access and fraud and

17  intentional interference with Yelp's prospective economic advantage;

18       8.    For an order awarding Yelp treble damages on the basis of Defendants' violation

19  of the Lanham Act;

20       9.    For an order establishing a constructive trust for Yelp's benefit, consisting of all

21  revenues received by Defendants from their wrongful conduct which should rightfully have been

22  received by Yelp and all profits derived from that wrongful conduct, and directing Defendants to

23  pay all such sums to Yelp; and

24       10.    For an order awarding Yelp such other and further relief as the Court deems just

25  and proper.

26

27

28

**DEMAND FOR JURY TRIAL**

Yelp demands a jury trial on all triable issues.

Dated:  March 22, 2012

LEWIS & LLEWELLYN LLP
Marc R. Lewis
Paul T. Llewellyn

YELP INC.
Aaron Schur

By: _____
Marc R. Lewis
Attorneys for Plaintiff
Yelp Inc.

20

# EXHIBIT 1



November 18, 2011

**VIA EMAIL & US MAIL:** info@compucrawl.com

Computational Crawling LP d/b/a 80legs.com
Attention: Shion Deysarkar, CEO
1250 Wood Branch Park Dr., #405
Houston, TX 77079

>    **Re:    80legs.com**

Dear Mr. Deysarkar:

We at Yelp! Inc. ("**Yelp**") have reviewed your website (80legs.com), and in particular the services you offer on it in relation to our websites, including without limitation www.yelp.co.uk and www.yelp.com (the "**Yelp Sites**").  Attached as Exhibit A are screenshots from the 80legs website demonstrating some these services, namely "crawl packages" which you describe on your website as "a pre-configured live crawl of a website" as well as "[a]rchived data from previous crawls" of that website.  80legs sells, without authorization, "crawl packages" consisting of large quantities of data it has copied from the Yelp Sites.

By accessing the Yelp Sites to perform these services, 80legs – and anyone acting at its direction – are in violation of the Terms of Service posted on the Yelp Sites (the "Yelp TOS" available at www.yelp.com/static?p=tos&country=US).  For example, section 6(B) of the Yelp TOS states that you may not "[m]odify, adapt, appropriate, reproduce, distribute, translate, create derivative works or adaptations of, publicly display, sell, trade, or in any way exploit the Service or Site Content (other than Your Content), except as expressly authorized by Yelp," and that you may not "[u]se any robot, spider, site search/retrieval application, or other automated device, process or means to access, retrieve, scrape, or index any portion of the Service or any Site Content."  Section 6(A) of the Yelp TOS states that you may not "use the Service for commercial purposes, except in connection with a Business Account and as expressly permitted by Yelp."   These and other sections of the Yelp TOS expressly prohibit any 80legs activity on the Yelp Sites to provide its services.  80legs.com's wholesale copying and selling of content from the Yelp Sites also infringes the copyrights of Yelp and its users in that content.

To avoid any uncertainty, we want to make clear that 80legs is not authorized to access the Yelp Sites or post content from the Yelp Sites to its own website.  Nor is it permitted to induce others to access the Yelp Sites in violation of the Yelp TOS.  Please cease and desist this conduct immediately.  Please also immediately cease the sale of Yelp's data through your crawl packages, and cease use of any data you have copied from the Yelp Sites.

1



Please confirm for me immediately that you will comply with these requests. In addition, please provide me with the following information:

- The number of each of the following "crawl packages" that you have sold: 1) Yelp Crawl, 2) Yelp.co.uk Crawl, and 3) Yelp People Crawl.

- Whether 80legs offers, or has offered, any other data obtained from a Yelp Site in any form.

- Information sufficient to identify the recipients of each of those crawl packages identified above.

- The amount of money you have received from sales of each of those crawl packages identified above.

Yelp of course reserves its legal rights as against Computational Crawling, 80legs.com, and anyone acting on their behalf, including without limitation any claim for violations of the Yelp TOS, the federal Computer Fraud and Abuse Act, the California Penal Code, copyright infringement, unfair competition, and any other applicable laws.

I would appreciate a response from you no later than December 1, 2011.

Regards,

Aaron Schur
Corporate Counsel
Yelp! Inc.
706 Mission Street, 7th Floor
San Francisco, California 94103

# Exhibit A









# EXHIBIT 2

December 19, 2011

*Via Electronic Mail*
Jack E. McGehee, Esq.
1250 Wood Branch Park Drive, Suite 625
Houston, Texas 77079

     Re:    *Confidentiality Agreement between Yelp! Inc. and 80legs.com*

Dear Mr. McGehee:

    This is further to our discussion about engaging in early discussions to see if the parties can arrive at an amicable resolution of this matter without the need for costly litigation. Toward that end, we propose that this letter serve as the parties' confidentiality agreement to allow the parties to exchange information as part of these discussions. Nothing in this paragraph, or in this confidentiality agreement generally, shall be construed as requiring either party to provide any information or documents.

    If your client agrees, please have your client sign below and this letter will memorialize the terms of the confidentiality agreement governing all settlement discussions between Computational Crawling LP d/b/a 80legs.com ("80legs") and Yelp! Inc. ("Yelp") concerning the subject matter of my letter to 80legs dated November 18, 2011

**Confidentiality/FRE 408 Agreement**

    1.    <u>Confidential Treatment</u>. Except as provided in paragraph 4 below, 80legs and Yelp, and their respective in-house counsel and outside counsel and their respective executives who participate in the settlement discussions as listed below, agree to and shall treat as "Confidential Information" any revenue or sales information exchanged, any settlement proposals exchanged, anything that is said (with the exception of any positions taken with respect to the merits of the case formed by any participant in connection with any such discussions), and any documents exchanged in connection with said discussions. If the parties ultimately reach an agreement resulting in a settlement agreement, any such agreement will include the terms of its confidentiality; this agreement does not extend to any final settlement agreements, although it does apply to negotiations and drafts leading up to a final agreement. "Confidential Information" shall also include any correspondence, documents or exchanges leading up to or occurring after commencement of such discussions. The persons permitted

Aaron Schur
December 9, 2011
Page 2

access to "Confidential Information" are: Jack E. McGehee and Shion Deysarkar on
behalf of 80legs; and Aaron Schur and Laurence Wilson of Yelp! Inc., and any outside
counsel or their staff on behalf of Yelp or 80legs.

Aaron Schur
December 9, 2011
Page 3

2.     **No Relation To Damages.** It is possible that, as part of these discussions, the parties will exchange proposed monetary settlement terms. It is understood and agreed that any settlement amounts, reasonable royalty terms or other financial terms exchanged between the parties are not intended to be, and are not, indicative of the value of any claims or license, or the amount of damages to which Yelp would be entitled to receive or recover, whether through any litigation, lawsuit, or other proceeding, whether at trial or otherwise. To the contrary, any such numbers or terms exchanged are solely for settlement purposes and within the context of confidential compromise negotiations, and do not relate in any way to a hypothetical license negotiation. It shall be impermissible for any damages expert to rely on this Agreement and/ or any "Confidential Information" to establish, refute or support any damages theory or reasonable royalty at any time in any legal proceeding. It is the intent and understanding of the parties hereto that the specific information exchanged pursuant to this agreement should not be relied upon by any damages expert or other person, entity, tribunal or court in evaluating, opining on or establishing the value of Yelp's claims, licenses, technology, intellectual property, and/or any reasonable royalty or license fee applicable thereto.

3.     **Prohibited Uses Of Confidential Information.** The parties agree that neither this Agreement nor any "Confidential Information" shall be: (a) disclosed to anyone outside of the persons listed in paragraph 1 above; (b) disclosed to the any judge, jury, arbitrator, or other tribunal in any lawsuit or arbitration; (c) admissible in any court or proceeding; (d) disclosed to any damages expert witness or consultant; (e) used to establish, refute or support any damages theory or reasonable royalty; or (f) used or admissible for any purpose, including impeachment or damages, outside of these discussions, including without limitation in any pending or future proceeding in any court.

4.     **Limited Exceptions To Confidentiality.** This agreement does not prohibit disclosures: (a) of positions taken with respect to the merits of the case; (b) of information that is publicly available; (c) of information that is shown by written evidence that it was known to the recipient of the information prior to its disclosure; (d) of information that is subsequently and lawfully obtained independently by the recipient of the information; and (e) as are otherwise required by a court of competent jurisdiction, provided the other party is first given advance notice of such disclosure and a reasonable opportunity to oppose such disclosure, and further provided that any court-ordered disclosure shall be pursuant to a protective order entered by a court of competent jurisdiction and designated for outside counsels' eyes only unless otherwise ordered by the court of competent jurisdiction.

5.     **Rule 408 Of The Federal Rules Of Evidence.** The protection provided under this confidentiality agreement includes and exceeds that provided under Rule 408 of the

Aaron Schur
December 9, 2011
Page 4

Federal Rules of Evidence, and any equivalent state law providing for protection of settlement communications, negotiations, or offers to compromise.

To confirm 80legs's agreement to the terms set forth herein, please have your client sign and date this letter in the space below and return a signed copy to me. By signing below, I am agreeing to the terms set forth herein on behalf of Yelp.

Regards,

Aaron Schur
Corporate Counsel
Yelp! Inc.

APPROVED AND AGREED TO:

80legs

By: _____     Dated: ~~August~~ ___, 2011

Printed name: _Steven Dengsarker_            December 13, 2011

Title: ___CEU___

# EXHIBIT 3



## Terms of Service

Last Updated on September 21, 2011. To review the previous terms, please click here.

These terms and conditions (the **"Terms"**) govern your access to and use of Yelp's websites and mobile applications that link to or reference these Terms (**"Site"**). By accessing or using the Site, you are agreeing to these Terms and concluding a legally binding contract with Yelp! Inc. (**"Yelp"**). Do not access or use the Site if you are unwilling or unable to be bound by the Terms.

### 1. DEFINITIONS

#### A. Parties

**"You"** and **"your"** refer to you, as a user of the Site. A **"user"** is someone who accesses, browses, crawls, scrapes, or in any way uses the Site. **"We"**, **"us"**, and **"our"** refer to Yelp.

#### B. Content

**"Content"** means text, images, photos, audio, video, location data, and all other forms of data or communication. **"Your Content"** means Content that you submit or transmit to, through, or in connection with the Site, such as ratings, reviews, compliments, invitations, check-ins, messages, and information that you publicly display or display ed in your account profile. **"User Content"** means Content that users submit or transmit to, through, or in connection with the Site. **"Yelp Content"** means Content that we create and make available in connection with the Site. **"Third Party Content"** means Content that originates from parties other than Yelp or its users, which is made available in connection with the Site. **"Site Content"** means all of the Content that is made available in connection with the Site, including Your Content, User Content, Third Party Content, and Yelp Content.

### 2. CHANGES TO THE TERMS OF SERVICE

We may modify the Terms from time to time. When changes are made, we will notify you by making the revised version available on this webpage, and will indicate at the top of this page the date that revisions were last made. You should revisit these Terms on a regular basis as revised versions will be binding on you. Any such modification will be effective upon our posting of new Terms. **You understand and agree that your continued access to or use of the Site after any posted modification to the Terms indicates your acceptance of the modification.**

### 3. TRANSLATION

We may translate these Terms into other languages for your convenience. Nevertheless, the English version governs your relationship with Yelp, and any inconsistencies among the different versions will be resolved in favor of the English version.

### 4. USING THE SITE

#### A. Eligibility

To access or use the Site, you must be 18 years or older and have the requisite power and authority to enter into these Terms. You may not access or use the Site if you are a competitor of ours or if we have previously banned you from the Site or closed your account.

#### B. Permission to Use the Site

We grant you permission to use the Site subject to the restrictions in these Terms. Your use of the Site is at your own risk, including the risk that you might be exposed to Content that is offensive, indecent, inaccurate, objectionable, or otherwise inappropriate.

#### C. Site Availability

The Site may be modified, updated, interrupted, suspended or discontinued at any time without notice or liability.

#### D. User Accounts

You must create an account and provide certain information about yourself in order to use some of the features that are offered through the Site. You are responsible for maintaining the confidentiality of your account password. You are also responsible for all activities that occur in connection with your account. You agree to notify us immediately of any unauthorized use of your account. We reserve the right to close your account at any time for any or no reason.

Your account is for your personal, non-commercial use only. In creating it, we ask that you provide complete and accurate information about yourself to bolster your credibility as a contributor to the Site. You may not impersonate someone else (e.g., adopt the identity of a celebrity or your next-door neighbor), create or use an account for anyone other than yourself, provide an email address other than your own, or create multiple accounts. If you use a pseudonym, take care to note that others may still be able to identify you if, for example, you include identifying information in your reviews, use the same account information on other sites, or allow other sites to share information about you with Yelp. Please read our Privacy Policy for more information.

#### E. Communications from Yelp and other Users

By creating an account, you agree to receive certain communications in connection with the Site. For example, you might receive compliments or friend requests from other Users. You will also receive our weekly e-mail newsletter about happenings in your neighborhood. You can opt-out of non-essential communications here.

### 5. CONTENT

#### A. Responsibility for Your Content

You alone are responsible for Your Content, and once published, it cannot always be withdrawn. You assume all risks associated with Your Content, including anyone's reliance on its quality, accuracy, or reliability, or any disclosure by you of information in Your Content that makes you personally identifiable. You represent that you own, or have the necessary permissions to use and authorize the use of Your Content as described herein. You may not imply that Your Content is in any way sponsored or endorsed by Yelp.

You may expose yourself to liability if, for example, Your Content contains material that is false, intentionally misleading, or defamatory; violates any third-party right, including any copyright, trademark, patent, trade secret, moral right, privacy right, right of publicity, or any other intellectual property or proprietary right; contains material that is unlawful, including illegal hate speech or pornography; exploits or otherwise harms minors; or violates or advocates the violation of any law or regulation.

#### B. Our Right to Use Your Content

We may use Your Content in a number of different ways, including publicly displaying it, reformatting it, incorporating it into advertisements and other works, creating derivative works from it, promoting it, distributing it, and allowing others to do the same in connection with their own websites and media platforms (**"Other Media"**). As such, you hereby irrevocably grant us world-wide, non-exclusive, royalty-free, sublicensable, transferable rights to use Your Content for any purpose. You also irrevocably grant the users of the Site and any Other Media the right to access Your Content in connection with their use of the Site and any Other Media. Finally, you irrevocably waive, and cause to be waived, against Yelp and its users any claims and assertions of moral rights or attribution with respect to Your Content. By "use" we mean use, copy, publicly perform or display, distribute, modify, translate, and create derivative works of Your Content.

#### C. Ownership

As between you and Yelp, you own Your Content. We own the Yelp Content, including but not limited to visual interfaces, interactive features, graphics, design, compilation, computer code, products, software, aggregate user review ratings, and all other elements and components of the Site excluding Your Content, User Content and Third Party Content. We also own the copyrights, trademarks, service marks, trade names, and other intellectual and proprietary rights throughout the world (**"IP Rights"**) associated with the Yelp Content and the Site, which are protected by copyright, trade dress, patent, trademark laws and all other applicable intellectual and proprietary rights and laws. As such, you may not modify, reproduce, distribute, create derivative works or adaptations of, publicly display or in any way exploit any of the Yelp Content in whole or in part except as expressly authorized by us. Except as expressly and unambiguously provided herein, we do not grant you any express or implied rights, and all rights in and to the Site and the Yelp Content are retained by us.

D. **Advertising**

Yelp and its licensees may publicly display advertisements and other information adjacent to or included with Your Content. You are not entitled to any compensation for such advertisements. The manner, mode and extent of such advertising are subject to change without specific notice to you.

E. **Content Feeds**

We make some of the Site Content (**"Feed Content"**) available via Real Simple Syndication and Atom feeds (**"Feeds"**). You may access and use the Feeds in order to display Feed Content on your personal computer, website, or blog (**"Your Site"**), provided that (i) your use of the Feeds is for personal, non-commercial purposes only, (ii) your display of the Feed Content links back to the relevant pages on Yelp's websites, and attributes Yelp as the source of the Feed Content, (iii) your use or display of the Feed Content does not suggest that Yelp promotes or endorses any third party causes, ideas, websites, products or services, including Your Site, (iv) you do not redistribute the Feed Content, and (v) your use of the Feeds does not overburden Yelp's systems. Yelp reserves all rights in the Feed Content and may terminate the Feeds at any time. Please select "Partnerships" on our contacts page here to inquire about other possible uses of the Feeds.

F. **Other**

User Content does not necessarily reflect the opinion of Yelp. We reserve the right to remove, screen, edit, or reinstate User Content from time to time at our sole discretion and without notice to you. For example, we may remove a review if we believe it violates our Content Guidelines. We have no obligation to retain or provide you with copies of Your Content, nor do we guarantee any confidentiality with respect to Your Content.

6. **RESTRICTIONS**

We are under no obligation to enforce the Terms on your behalf against another user. While we encourage you to let us know if you believe another user has violated the Terms, we reserve the right to investigate and take appropriate action at our sole discretion.

A. **You agree not to, and will not assist, encourage, or enable others to use the Site to:**

i. Violate our Content Guidelines, for example, by writing a fake or defamatory review, trading reviews with other businesses, or compensating someone or being compensated to write or remove a review;

ii. Violate any third party's rights, including any breach of confidence, copyright, trademark, patent, trade secret, moral right, privacy right, right of publicity, or any other intellectual property or proprietary right;

iii. Threaten, stalk, harm, or harass others, or promote bigotry or discrimination;

iv. Promote a business or other commercial venture or event, or otherwise use the Site for commercial purposes, except in connection with a Business Account and as expressly permitted by Yelp;

v. Send bulk emails, surveys, or other mass messaging, whether commercial in nature or not; engage in keyword spamming, or otherwise attempt to manipulate the Site's search results or any third party website;

vi. Solicit personal information from minors, or submit or transmit pornography; or

vii. Violate any applicable law.

B. **You also agree not to, and will not assist, encourage, or enable others to:**

i. Violate the Terms;

ii. Modify, adapt, appropriate, reproduce, distribute, translate, create derivative works or adaptations of, publicly display, sell, trade, or in any way exploit the Site or Site Content (other than Your Content), except as expressly authorized by Yelp;

iii. Use any robot, spider, site search/retrieval application, or other automated device, process or means to access, retrieve, scrape, or index any portion of the Site or any Site Content;

iv. Reverse engineer any portion of the Site;

v. Remove or modify any copyright, trademark or other proprietary rights notice that appears on any portion of the Site or on any materials printed or copied from the Site;

vi. Record, process, or mine information about other users;

vii. Access, retrieve or index any portion of the Site for purposes of constructing or populating a searchable database of business reviews;

viii. Reformat or frame any portion of the Site;

ix. Take any action that imposes, or may impose, in our sole discretion, an unreasonable or disproportionately large load on Yelp's technology infrastructure or otherwise make excessive traffic demands of the Site;

x. Attempt to gain unauthorized access to the Site, user accounts, computer systems or networks connected to the Site through hacking, password mining or any other means;

xi. Use the Site or any Site Content to transmit any computer viruses, worms, defects, Trojan horses or other items of a destructive nature (collectively, **"Viruses"**);

xii. Use any device, software or routine that interferes with the proper working of the Site, or otherwise attempt to interfere with the proper working of the Site;

xiii. Use the Site to violate the security of any computer network, crack passwords or security encryption codes; disrupt or interfere with the security of, or otherwise cause harm to, the Site or Site Content; or

xiv. Remove, circumvent, disable, damage or otherwise interfere with any security-related features of the Site, features that prevent or restrict the use or copying of Site Content, or features that enforce limitations on the use of the Site.

The restrictions above only apply to the extent permissible under applicable law. Nevertheless, you agree not to act contrary to them (even if permissible under applicable law) without providing 30 days' prior written notice to us here, together with any information that we may reasonably require to give us an opportunity to provide alternative remedies or otherwise accommodate you at our sole discretion.

7. **GUIDELINES AND POLICIES**

A. **Content Guidelines**

You represent that you have read and understood our Content Guidelines.

B. **Privacy**

You represent that you have read and understood our Privacy Policy. Note that we may disclose information about you to third parties if we have a good faith belief that such a disclosure is reasonably necessary to (i) take action regarding suspected illegal activities; (ii) enforce or apply our Terms and Privacy Policy; (iii) comply with legal process or other government inquiry, such as a search warrant, subpoena, statute, judicial proceeding, or other legal process served on us; or (iv) protect our rights, reputation, and property, or that of our users, affiliates, or the public. If you use the Site outside of the United States, you consent to having your personal data transferred to and processed in the United States.

C. **Copyright And Trademark Disputes**

Please see our Infringement Policy for information about copyright and trademark disputes.

8. **YELP DEALS AND YELP ADVERTISING**

If you purchase a Yelp Deal, the terms of your purchase will be governed by the Yelp Deal General Terms. Please review them before you make each purchase since they may change from time to time. In the event of any conflict between the Yelp Deal General Terms and these Terms, the Yelp Deal General Terms will prevail.

Similarly, if you create a business owner's account on the Site or purchase advertising from Yelp, the Yelp Advertising Terms will apply. In the event of any conflict between the Yelp Advertising Terms and these Terms, the Yelp Advertising Terms will prevail.

9. **SUGGESTIONS AND IMPROVEMENTS**

By sending us any ideas, suggestions, documents or proposals (**"Feedback"**), you agree that (i) your Feedback does not contain the confidential or proprietary information of third parties, (ii) we are under no obligation of confidentiality, express or implied, with respect to the Feedback, (iii) we may have something similar to the Feedback already under consideration or in development, and (iv) you grant us an irrevocable, non-exclusive, royalty-free, perpetual, worldwide license to use, modify, publish,

distribute and sublicense the Feedback.

**THIRD PARTIES**

The Site may include links to other websites or applications (each, a **"Third Party Site"**). We do not control or endorse any Third Party Site. You agree that we are not responsible for the availability or contents of such Third Party Sites. Your use of Third Party Sites is at your own risk.

Some of the services made available through the Site are provided in connection with third parties and subject to additional terms posted here which are incorporated herein by reference.

11. **INDEMNITY**

You agree to indemnify, defend, and hold Yelp, its parents, subsidiaries, affiliates, any related companies, suppliers, licensors and partners, and the officers, directors, employees, agents and representatives of each of them (collectively, the "Yelp Entities") harmless, including costs, liabilities and legal fees, from any claim or demand made by any third party arising out of or relating to (i) your access to or use of the Site, (ii) your violation of the Terms, (iii) any products or services purchased or obtained by you in connection with the Site, or (iv) the infringement by you, or any third party using your account, of any intellectual property or other right of any person or entity. Yelp reserves the right, at your expense, to assume the exclusive defense and control of any matter for which you are required to indemnify us and you agree to cooperate with our defense of these claims. You agree not to settle any matter without the prior written consent of Yelp. Yelp will use reasonable efforts to notify you of any such claim, action or proceeding upon becoming aware of it.

12. **DISCLAIMERS AND LIMITATIONS OF LIABILITY**

PLEASE READ THIS SECTION CAREFULLY SINCE IT LIMITS THE LIABILITY OF YELP AND ITS SUBSIDIARIES, AFFILIATES, AND LICENSORS (COLLECTIVELY, THE "YELP ENTITIES"). EACH OF THE SUBSECTIONS BELOW ONLY APPLIES UP TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW. NOTHING HEREIN IS INTENDED TO LIMIT ANY RIGHTS YOU MAY HAVE WHICH MAY NOT BE LAWFULLY LIMITED.

A. THE SITE IS MADE AVAILABLE TO YOU ON AN "AS IS", "WITH ALL FAULTS" AND "AS AVAILABLE" BASIS. YOUR USE OF THE SITE IS AT YOUR OWN DISCRETION AND RISK. THE YELP ENTITIES MAKE NO CLAIMS OR PROMISES ABOUT THE QUALITY, ACCURACY, OR RELIABILITY OF THE SITE, ITS SAFETY OR SECURITY, OR THE SITE CONTENT. ACCORDINGLY, THE YELP ENTITIES ARE NOT LIABLE TO YOU FOR ANY LOSS OR DAMAGE THAT MIGHT ARISE, FOR EXAMPLE, FROM YOUR RELIANCE ON THE QUALITY, ACCURACY, OR RELIABILITY OF THE BUSINESS LISTINGS, RATINGS, OR REVIEWS.

B. THE YELP ENTITIES MAKE NO CLAIMS OR PROMISES WITH RESPECT TO ANY THIRD PARTY, SUCH AS THE BUSINESSES LISTED ON THE SITE OR THE SITE'S USERS. ACCORDINGLY, THE YELP ENTITIES ARE NOT LIABLE TO YOU FOR ANY LOSS OR DAMAGE THAT MIGHT ARISE FROM THEIR ACTIONS, INCLUDING, FOR EXAMPLE, IF ANOTHER USER MISUSES YOUR CONTENT OR IDENTITY, OR IF YOU HAVE A NEGATIVE EXPERIENCE WITH ONE OF THE BUSINESSES LISTED ON THE SITE. YOUR PURCHASE AND USE OF PRODUCTS OR SERVICES OFFERED BY THIRD PARTIES THROUGH THE SITE IS AT YOUR OWN DISCRETION AND RISK.

C. THE YELP ENTITIES EXPRESSLY DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES AS TO THE PRODUCTS OR SERVICES OFFERED BY BUSINESSES LISTED ON THE SITE, AND IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. NO ORAL OR WRITTEN INFORMATION OR ADVICE PROVIDED TO YOU BY A REPRESENTATIVE OF ONE OF THE YELP ENTITIES SHALL CREATE A REPRESENTATION OR WARRANTY.

D. YOUR SOLE AND EXCLUSIVE RIGHT AND REMEDY IN CASE OF DISSATISFACTION WITH THE SITE, RELATED SERVICES, OR ANY OTHER GRIEVANCE SHALL BE YOUR TERMINATION AND DISCONTINUATION OF ACCESS TO, OR USE OF THE SITE.

E. THE YELP ENTITIES' MAXIMUM AGGREGATE LIABILITY TO YOU FOR LOSSES OR DAMAGES THAT YOU SUFFER IN CONNECTION WITH THE SITE OR THESE TERMS IS LIMITED TO THE GREATER OF (i) THE AMOUNT PAID, IF ANY, BY YOU TO THE YELP ENTITIES IN CONNECTION WITH THE SITE IN THE 12 MONTHS PRIOR TO THE ACTION GIVING RISE TO LIABILITY, OR (ii) $100.

F. THE YELP ENTITIES DISCLAIM LIABILITY FOR ANY (i) INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, RELIANCE, OR CONSEQUENTIAL DAMAGES, (ii) LOSS OF PROFITS, (iii) BUSINESS INTERRUPTION, (iv) REPUTATIONAL HARM, OR (v) LOSS OF INFORMATION OR DATA.

13. **CHOICE OF LAW AND VENUE**

California law will govern these Terms, as well as any claim, cause of action or dispute that might arise between you and Yelp (a **"Claim"**), without regard to conflict of law provisions. FOR ANY CLAIM BROUGHT BY EITHER PARTY, YOU AGREE TO SUBMIT AND CONSENT TO THE PERSONAL AND EXCLUSIVE JURISDICTION IN, AND THE EXCLUSIVE VENUE OF, THE STATE AND FEDERAL COURTS LOCATED WITHIN SAN FRANCISCO COUNTY, CALIFORNIA.

14. **TERMINATION**

A. You may terminate the Terms at any time by closing your account, discontinuing your use of the Site, and providing Yelp with a notice of termination here. Please review our Privacy Policy for information about what we do with your account when terminated.

B. We may close your account, suspend your ability to use certain portions of the Site, and/or ban you altogether from the Site for any or no reason, and without notice or liability of any kind. Any such action could prevent you from accessing your account, the Site, Your Content, Site Content, or any other related information.

C. In the event of any termination, whether by you or us, Sections 1, 5, 6, 10 - 14 of these Terms will continue in full force and effect, including our right to use Your Content as detailed in Section 5.

15. **GENERAL TERMS**

A. We reserve the right to modify, update, or discontinue the Site at our sole discretion, at any time, for any or no reason, and without notice or liability.

B. We may provide you with notices, including those regarding changes to the Terms by email, regular mail or communications through the Site.

C. Except as otherwise stated in Section 10 above, nothing herein is intended, nor will be deemed, to confer rights or remedies upon any third party.

D. The Terms contain the entire agreement between you and us regarding the use of the Site, and supersede any prior agreement between you and us on such subject matter. The parties acknowledge that no reliance is placed on any representation made but not expressly contained in these Terms.

E. Any failure on Yelp's part to exercise or enforce any right or provision of the Terms does not constitute a waiver of such right or provision. The failure of either party to exercise in any respect any right provided for herein shall not be deemed a waiver of any further rights hereunder.

F. If any provision of the Terms is found to be unenforceable or invalid, that provision shall be limited or eliminated to the minimum extent necessary so that the Terms shall otherwise remain in full force and effect and enforceable.

G. The Terms are not assignable, transferable or sublicensable by you except with Yelp's prior written consent, but may be assigned or transferred by us without restriction. Any assignment attempted to be made in violation of the Terms shall be void.

H. The section titles in the Terms are for convenience only and have no legal or contractual effect.